UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYLAND HARRIS,

          Petitioner,

v.

ERIC RARDIN,

          Respondent.

                       /

Case No. 2:25-cv-10134

HONORABLE STEPHEN J. MURPHY, III

## **OPINION AND ORDER DISMISSING PETITION [1]**

Myland Harris is incarcerated at FCI Milan. He petitioned for a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the process surrounding revocation of his good time credits at a disciplinary hearing. ECF No. 1. He made two distinct due process arguments, one about the sufficiency of the evidence and another about his right to present evidence in his defense. *See* ECF No. 12, PageID.196. Though the Court dismissed the sufficiency-of-the-evidence challenge, *id.* at PageID.196–197, it held an evidentiary hearing on whether Harris was prevented from presenting video evidence at the disciplinary hearing, *id.* at PageID.203.

The Court held an evidentiary hearing because it appeared that the Government had taken inconsistent positions about whether video footage existed and whether Harris's staff representative reviewed it. But the hearing cleared up any ambiguity. The Court finds that Harris's staff representative reviewed video footage from the time of the incident, but the footage did not capture the incident. The fact that the hearing officer did not personally review footage that did not depict the

1

incident is not a due process violation. Even if it was, the error is harmless because the footage could not have aided Harris's defense. Thus, the Court will dismiss the petition.

## BACKGROUND

Here are the basic facts of the incident set forth in the Disciplinary Hearing Officer (DHO) report. In April 2024, Corrections Officer Fleming confiscated a sexually suggestive calendar from Harris. When Harris tried to get the calendar back, Fleming told him that she was keeping the calendar. Harris responded, "no you not." She told him to step back. He did not. Then, Harris "pushed passed" the officer and "snatched the calendar" from her desk. Though Fleming ordered Harris to "comply with handcuffs," he started walking back to his cell. Staff then confined Harris in the office and Harris complied with the commands without further incident. ECF No. 10-5, PageID.153. Corrections Officer St. Clair also observed the incident, and he saw Harris "push Officer Fleming while trying to grab something out of her hand." ECF No. 10-5, PageID.156.

Officer Flemming recommended two charges (1) assault without serious injury and (2) refusing to obey an order. The prison scheduled a disciplinary hearing for April 30, 2024, and provided advance notice to Harris. *See id.* at PageID.145.

Harris denied that he ever touched Officer Fleming and said that video footage would prove his innocence. ECF No. 1, PageID.10. Before the disciplinary hearing, Harris asked his staff representative, Martin Kirk, to review video footage of the incident. *Id.* at PageID.11; ECF No. 10-5, PageID.147. At that point, accounts

2

diverged about what happened next. Harris alleged that, at the hearing, Kirk said that he never reviewed the video because he "didn't think it would capture anything." ECF No. 1, PageID.11. According to the Disciplinary Hearing Officer (DHO) report, however, Kirk reviewed video of the incident but found it "inconclusive to what had occurred." ECF No. 10-5, PageID.147. Without the video evidence, the DHO found that Harris committed assault without serious injury. Harris lost twenty-seven days of good time credit, in addition to other sanctions. *Id.* at PageID.148.

Harris then petitioned for a writ of habeas corpus. ECF No. 1. Respondent opposed the petition and asked the Court to deny the petition. ECF No. 10, PageID.129. But because of factual issues surrounding the video evidence, the Court scheduled an evidentiary hearing and appointed counsel for Harris. ECF No. 12. Both parties filed supplemental briefing. ECF Nos. 15, 16.

At the evidentiary hearing in December 2025, the Court heard testimony from staff representative Kirk and DHO Jason Bradley. ECF No. 17, PageID.306. The Court found the testimony of both witnesses to be coherent and credible. Thus, it makes the following factual findings about the video footage.

Before Harris's disciplinary hearing, Kirk met with Harris. Harris asked Kirk to review footage of the incident. Kirk then requested the footage from the lieutenant's office and reviewed the footage. But no footage captured the incident. *See id.* at PageID.311–312. There was a camera near the incident that was always recording and could move. *Id.* at PageID.312–313. The camera, however, did not move automatically and had to be moved by a corrections officer. *Id.* at PageID.330.

Because the camera was pointed in a different direction at the time of the incident, there was no footage of it. *See id.* at PageID.316–317.

Kirk reviewed all times that the incident could have appeared on video because he reviewed video from before and after the duress alarm. *Id.* at PageID.327–328. Notwithstanding Petitioner's attempts to muddy the timing of the incident, the Court finds that the incident was not captured on camera.[1]

## DISCUSSION

Prisoners can challenge the execution of a sentence through a habeas petition under 28 U.S.C. § 2241. *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). As noted above, Harris made two distinct due process arguments. First, he challenged the sufficiency of the evidence against him by arguing that the DHO improperly relied on a since-expunged incident report. Second, Harris argued that the Government violated his right to present documentary evidence in his defense. *See* ECF No. 12, PageID.196.

As an initial matter, the Court already disposed of Harris's first argument in a prior order, ECF No. 12, PageID.196–197, and it adopts the entirety of that reasoning here.

---

[1] Prior to the December 2025 evidentiary hearing, Kirk made some imprecise statements about the video footage. *See, e.g.*, ECF No. 1, PageID.25 (noting that his "review of video was found to be inconclusive to what had occurred"); *id.* at PageID.23 (noting that "[n]o footage was reviewed due to none being available"). After the hearing, however, it is clear that these statements were really trying to communicate the same idea—that although Kirk reviewed camera footage captured during the incident, he did not review footage *of the altercation itself* because none existed. *See* ECF No. 17, PageID.316–317 ("[T]here was video of the time that the incident took place. However, it was just not in the direction that the incident took place.").

4

Next, as to Harris's second argument about a procedural flaw in the proceedings, the claim also fails. Because there was no video of the altercation between Harris and Officer Fleming, Harris's due process rights were not violated when he was unable to present any video evidence at his disciplinary hearing.

"When a prison disciplinary board takes action that results in the loss of good time credits in which the prisoner has a vested liberty interest, the Due Process Clause requires prison officials to observe certain protections for the prisoner." *Haywood v. Warden of USP-Big Sandy*, No. 7:20-cv-055, 2020 WL 4288405, at *2 (E.D. Ky. July 27, 2020). Specifically, due process requires the following:

> (1) "advance written notice of the claimed violation" at least 24 hours before a disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, "to call witnesses and present documentary evidence in his defense"; and (3) "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken."

*Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at *3 (6th Cir. July 28, 2022) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)).

Here, the issue is the second requirement—Harris's right to "present documentary evidence in his defense." Courts have understood this language to include video evidence. For example, in *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019), the Fourth Circuit held that prisoners have "a qualified right to access and compel consideration of any video surveillance evidence of the incident giving rise to his loss of good time credits." *Id.* at 279. Other courts agree. *See, e.g.*, *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 174 (3d Cir. 2011); *Howard v. U.S. Bureau Of Prisons*, 487 F.3d 808, 813–15 (10th Cir. 2007); *cf. Jones v. Cross*, 637 F.3d 841, 847 (7th Cir.

5

2011) (suggesting that there is a limited due process right to exculpatory video evidence in prison disciplinary proceedings). After all, "[i]f an inmate has a circumscribed right to present documentary evidence, logic dictates that he must also have some possible means for obtaining it." *Smith v. Mass. Dep't of Corr.*, 936 F.2d 1390, 1401 (1st Cir. 1991).

The Sixth Circuit has not squarely determined whether the qualified right to "present documentary evidence" includes the right to access and compel consideration of video evidence. Nevertheless, the weight of published appellate authority suggests that Harris had a qualified right to obtain and present video evidence of the altercation. So, the Court will assume Harris had the right in the instant order.

But here, there was no footage of the incident. Whatever footage that existed at the time of the incident did not depict the altercation between Harris and Officer Fleming. As a result, the DHO's non-consideration of footage that did not depict the altercation at issue cannot violate any procedural due process right. And even if it did, the violation would be harmless. "[I]n evaluating whether prison officials' failure to disclose or consider evidence was harmless, courts must determine whether the excluded evidence could have aided the inmate's defense." *Lennear*, 937 F.3d at 277; *Corley v. Hogsten*, No. 0:11 -00097, 2011 WL 3809939, at *3 (E.D. Ky. Aug. 25, 2011) ("[A] § 2241 petitioner is entitled to habeas corpus relief on such a claim only where the petitioner shows resulting prejudice.") (collecting cases). Because the "excluded" footage did not depict the altercation between Harris and Fleming, the footage would not have aided Harris's defense. As a result, the Court must deny the petition.

6

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus [1] is **DENIED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 14, 2026

7